**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

JUSTIN METUCHEN GAMBA,
  *Defendant-Appellant.*

No. 06-35021

D.C. Nos.
CV-04-00162-DWM
CR-01-00068-DWM

OPINION

On Remand from the United States Supreme Court

Filed August 28, 2008

Before: Alfred T. Goodwin, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## COUNSEL

Daniel R. Wilson, Measure, Robbin & Wilson, P.C., Kalispell, Montana, for the defendant-appellant.

Joshua S. Van de Wetering, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Justin Metuchen Gamba was convicted and sentenced for witness tampering in violation of 18 U.S.C. § 1512(b). Gamba appeals the district court's denial of his petition for relief filed under 28 U.S.C. § 2255. Specifically, Gamba argues that the district court erred in denying his § 2255 motion because it did not find Gamba's appellate counsel ineffective when he failed to challenge on appeal the magistrate judge's jurisdiction to preside over closing argument without Gamba's personal consent. We affirm because the magistrate judge had proper jurisdiction over closing argument at Gamba's trial. Defense counsel may waive a defendant's right to have an Article III judge conduct closing argument without the defen-

dant's express, personal consent where the decision is one of trial tactics or strategy.

## FACTS AND PROCEDURAL HISTORY

Gamba was charged with two counts of making false statements in violation of 18 U.S.C. § 1001, two counts of witness tampering in violation of 18 U.S.C. § 1812(b), and one count of being an accessory after the fact in violation of 18 U.S.C. § 3. All of Gamba's charges arose from his attempts to foil the prosecution of his girlfriend on drug and gun charges. He pleaded not guilty to all charges and the case was set for jury trial. Gamba retained attorney Ed Sheehy to represent him at trial.

Gamba's trial lasted one day. After testimony concluded, Sheehy, without Gamba being present, and the Assistant United States Attorney, Joshua Van de Wetering, convened in the district court judge's chambers to finalize jury instructions. After the instructions were finalized, Chief District Judge Molloy informed the parties that he had to pick his wife up from the hospital and suggested that the trial reconvene after he returned. The relevant portion of the trial transcript reads as follows:

> THE COURT: Let me tell you what the problem is that I've got. I've got to pick my wife up at the hospital at 2:30 and run her home and then come back here. So what I'd like to do, if at all possible—and—shoot, it will be—2:30, make sure you're here at 2:30, because that's when it will be. And it just may delay me a little bit. Do you have any objection?

One thing that I could do is have Judge Erickson sit in on the argument and submit the case to the jury. I mean, I can instruct the jury, but then he would just preside and give it to the jury.

MR. SHEEHY: Yeah, I have no objection to that.

THE COURT: I'll leave it up to you guys and I won't force you, I just have to —

MR. SHEEHY: I understand.

THE COURT: If they did things the way I try and run things, I could go over, pick her up and be back in half hour.

MR. SHEEHY: I understand what you're talking about; I have no problem doing that.

MR.VAN de WETERING:
I think that's a great idea.

(Whereupon, the Court picked up the phone and had telephone conversation with Magistrate Judge Erickson's assistant.)

THE COURT: So is that all right with you guys?

MR SHEEHY: Yeah.

THE COURT: Is that all right with the defendant?

MR. SHEEHY: Yeah, he won't care.

THE COURT: So here's what we're going to do . . . . I'll go in, instruct the jury,

you get on your opening, you on yours and, hopefully, we can get it done. But if we're running out of time at 2:30, I'll take a break and then ask Judge Erickson to come in and just sit there for the balance of the argument and submit the instructions and Mary will swear in the bailiff and then send them off.

Shortly thereafter, the trial reconvened in the courtroom *with Gamba and the jury present.* Judge Molloy addressed the jury:

THE COURT:     I am going to have to leave at 2:30 because my wife had a medical procedure and I have to pick her up. So Judge Erickson, who is the magistrate judge, will come in and preside over the arguments of counsel in this case. They'll start while I'm here, but we may take a real short break so that I can step off and he can come in. *The parties have consented to that.*

(Emphasis added). Neither Gamba nor his counsel raised any objection to Judge's Molloy's announcement.

Judge Molloy exited the courtroom after instructing the jury and after counsel for the government had begun his closing argument. Magistrate Judge Erickson took the bench. Neither Gamba nor his counsel objected to the presence of Magistrate Judge Erickson, who made no comments or rulings during the time he presided over the closing arguments. At the conclusion of closing argument, Magistrate Judge Erickson submitted the case to the jury. The jury found

Gamba guilty of witness tampering in violation of 18 U.S.C. § 1812(b) and Gamba was later sentenced to thirty-three months imprisonment. Gamba did not object to the magistrate judge's presiding over closing argument after the jury handed down its verdict or when he was sentenced by the district court.

Gamba's petition for relief under 28 U.S.C. § 2255 comes after this court denied his first appeal for insufficiency of evidence. *See United States v. Gamba*, 76 F. App'x 209 (9th Cir. 2003). The district court denied Gamba's § 2255 motion on the grounds that Gamba's counsel did not render ineffective counsel by consenting to the magistrate judge presiding over closing argument or by failing to raise the magistrate judge consent issue on appeal, but granted Gamba a certificate of appealability on the magistrate jurisdiction issue pursuant to 28 U.S.C. § 2253(c).

On April 11, 2007, we affirmed the district court's holding that the magistrate judge had proper jurisdiction over closing arguments. *United States v. Gamba*, 483 F.3d 942 (2007). The Supreme Court vacated our decision and remanded for further consideration in light of *Gonzalez v. United States*, 128 S. Ct. 1765 (2008). *See Gamba v. United States*, 128 S. Ct. 2472 (2008) (mem.). At our request, the parties submitted supplemental briefing on the effect of *Gonzalez* on this case. The parties did not raise any questions of fact, and both parties agree that *Gonzalez* supports the district court's decision. We now reconsider this case in light of *Gonzalez*.

### JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. §§ 2253 and 2255.

### STANDARD OF REVIEW

Whether the district court's delegation of authority to a magistrate judge to preside over closing argument is proper

under the Federal Magistrates Act is a question of law subject to *de novo* review. *United States v. Colacurcio*, 84 F.3d 326, 328 (9th Cir. 1996). The district court's denial of a 28 U.S.C. § 2255 motion is also subject to *de novo* review. *United States v. Ware*, 416 F.3d 1118, 1120 (9th Cir. 2005).

## DISCUSSION

We address the issue of whether a district court judge may lawfully appoint a magistrate judge to preside over closing argument at a felony criminal trial if the defendant's counsel has, for trial tactic or legal strategy purposes and without the defendant's express, personal consent, agreed to such appointment.[1]

**[1]** "The Federal Magistrates Act, 28 U.S.C. §§ 631-39, governs the jurisdiction and authority of federal magistrates." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1118 (9th Cir. 2003) (en banc). The Act allows the district court to assign magistrate judges certain enumerated duties, as well as any "additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

The Supreme Court initially examined the scope of the "additional duties" provision of the Act in *Gomez v. United States*, 490 U.S. 858 (1989), in the context of whether a magistrate judge had jurisdiction to preside over *voir dire* in a felony trial. In *Gomez*, the Court determined the magistrate judge had exceeded his jurisdiction by conducting *voir dire* in

---

[1]While we have examined issues involving consent and magistrate jurisdiction, we have never specifically addressed the question posed in this appeal. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1119 (9th Cir. 2003) (en banc) (holding a magistrate judge may conduct plea colloquies pursuant to Federal Rule of Criminal Procedure 11 if defendant consents); *United States v. Sanchez-Sanchez*, 333 F.3d 1065, 1067 (9th Cir. 2003) (finding the magistrate judge lacked authority to conduct a revocation proceeding because neither defendant nor his counsel consented to allowing the magistrate judge to preside).

a felony trial over the defendant's objection. *Id*. at 876. Because the Court found no reference to jury selection in the Federal Magistrates Act or its legislative history, it determined Congress did not intend to include jury selection within the § 636(b)(3) "additional duties" provision. *Id*. at 871-76.

Two years later, faced with a conflict among the circuits in interpreting *Gomez* and applying the § 636(b)(3) catch-all "additional duties" provision, the Court decided *Peretz v. United States*, 501 U.S. 923 (1991). In *Peretz*, the petitioner and his counsel attended a pretrial conference, at which the district judge asked if there was any objection to a magistrate judge picking the jury and conducting *voir dire*. *Id.* at 925. The petitioner's counsel stated, "I would love the opportunity," and before jury selection, counsel for the petitioner and his codefendant assured the magistrate judge that the magistrate judge had their clients' consent to proceed. *Id.* The Court held that the delegation was proper, and stated that the rationale of *Gomez* "does not apply when the defendant *has not objected* to the magistrate's conduct of the *voir dire*." *Id.* at 933 (collecting cases) (emphasis added). The Court further noted that the holding in *Gomez* was "carefully limited to the situation in which the parties had not acquiesced at trial to the magistrate's role" and commented that courts had "uniformly rejected challenges to a magistrate's authority to conduct the *voir dire* when no objection to his performance of the duty had been raised in the trial court." *Id.* at 927-28.

After extolling the now essential role played by magistrate judges in helping district court judges handle their "bloated dockets," *id*. at 928 (internal quotation marks omitted), and concluding that with the defendant's consent the constitutional analysis is successfully negotiated, it noted:

> The generality of the category of "additional duties" indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial

process that had not already been tried or even fore-
seen. If Congress had intended strictly to limit these
additional duties to functions considered in the com-
mittee hearings or debates, presumably it would have
included in the statute a bill of particulars rather than
a broad residuary clause. Construing this residuary
clause absent concerns about raising a constitutional
issue or depriving a defendant of an important right,
we should not foreclose constructive experiments
that are acceptable to all participants in the trial pro-
cess and are consistent with the basic purposes of the
statute.

*Id.* at 932-33.

The Court also considered that no structural protections
provided by Article III were implicated by the procedure fol-
lowed in the case because "[t]he ultimate decision whether to
invoke the magistrate's assistance is made by the district
court, subject to veto by the parties." *Id*. at 937 (internal quo-
tation marks omitted). Furthermore, "[b]ecause the entire pro-
cess takes place under the district court's total control and
jurisdiction, there is no danger that use of the magistrate
involves a congressional attemp[t] to transfer jurisdiction [to
non-Article III tribunals] for the purpose of emasculating con-
stitutional courts." *Id*. (internal citations and quotation marks
omitted) (alterations in original). Finally, the Court held "that
permitting a magistrate to conduct the *voir dire* in a felony
trial when the defendant raises no objection is entirely faithful
to the congressional purpose in enacting and amending the
Federal Magistrates Act." *Id.* at 940.

**[2]** In *Gonzalez*, the Supreme Court reaffirmed *Peretz* and
held that counsel may consent to a magistrate judge presiding
over *voir dire* under § 636(b)(3) without the client's express
consent. 128 S. Ct. at 1772. The Court held that "[t]aken
together, *Gomez* and *Peretz* mean that 'the additional duties'
the statute permits the magistrate judge to undertake include

presiding at *voir dire* and jury selection provided there is consent but not if there is an objection." *Id.* at 1768. The Court further explained that counsel could consent without his client's knowledge or approval because the choice of a magistrate judge over a district court judge at the jury selection phase was a "tactical decision that is well suited for the attorney's own decision." *Id.* at 1770.

**[3]** This court applies a two-pronged test to determine whether a duty, not specified in the Act, may be delegated to a magistrate judge under the catch-all "additional duty" provision, § 636(b)(3). *Reyna-Tapia*, 328 F.3d at 1119. Under this test, whether a duty designated to a magistrate judge falls under § 636(b)(3), "depends, first and foremost, on whether the parties have consented, and secondly, on whether the additional duties bear some relation to the specified duties that magistrate judges can perform." *Id*. (citation and internal quotation marks omitted). *Gonzalez* sheds light on the "consent" prong of this test. Thus, with *Gonzalez* in mind, we apply this two-pronged test below to determine whether it was proper for the magistrate judge in this case to preside over closing arguments.

## A.   Consent

**[4]** The central issue before this panel is the degree to which a defendant himself must be involved in the decision to allow a magistrate judge to preside over closing argument. We hold that Sheehy's decision to consent to Magistrate Judge Erickson presiding over closing arguments without Gamba's express, personal consent, was lawful because Sheehy's decision was made for tactical and strategic reasons.

*Gonzalez* confirmed that defense counsel may waive certain rights of the accused as part of the trial strategy or tactics without obtaining the accused's express, personal consent. *See* 128 S. Ct. at 1770. *Gonzalez* held that it was a "tactical decision" for the defendant's counsel to allow a magistrate

judge to oversee *voir dire*. *Id.* The Court held that such a tactical decision did not require the defendant's consent, explaining: "The adversary process could not function effectively if every tactical decision required client approval." *Id.* (quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988)). In essence, "[g]iving the attorney control of trial management matters is a practical necessity." *Id.*

**[5]** Similarly, we have previously held that defense counsel may waive an accused's constitutional rights as a part of trial strategy. In *Wilson v. Gray*, 345 F.2d 282, 286 (9th Cir. 1965), *cert. denied*, 383 U.S. 919 (1965), for example, we determined that counsel may waive the accused's Sixth Amendment right to cross-examination and confrontation as a matter of trial tactics or strategy. There, defense counsel stipulated that a matter could be heard on the transcript of the preliminary hearing, though each side retained the right to produce additional evidence at trial. *Id.* at 287. We found that this decision was "deliberately made as a matter of trial tactics and strategy" because the accused was charged with assault with a deadly weapon, and the transcript of the witness testimony was "far more innocuous than the appearance of that witness before the state judge could ever have been." *Id.* at 287-88 & n.8. We concluded that in this instance the defendant's "right to cross examine and confront prosecution witnesses was effectively waived by his counsel." *Id.* at 288; *see also United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999) ("We therefore join the majority of circuit courts of appeals and hold that defense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound.").

**[6]** Just as defense counsel made a tactical decision in *Wilson* and in *Gonzalez*, Sheehy's decision to consent to Magistrate Judge Erickson presiding over Gamba's closing argument (to which Gamba made no objection when the agreement was announced in open court) was also a strategic,

tactical decision.² As Sheehy explained in a letter to Gamba, "if we had objected to Judge Erickson coming in and listening to the closing arguments, rather than Judge Molloy, Judge Molloy would have simply delayed the closing argument and I did not see the merit in doing that." Based on the record before this court, it appears that Sheehy understood the nuances of the case, observed the jury, and made a tactical decision that a continuance would disadvantage his client.

[7] The decision that counsel made here, to consent to a magistrate judge presiding over closing arguments that would otherwise have been delayed, is precisely the type of decision that counsel is retained to provide. *See Gideon v. Wainwright*, 372 U.S. 335, 345 (1963) (emphasizing the importance of the knowledge and skill counsel brings to bear when representing a defendant in a criminal trial). After all, few defendants have the training to permit them to appreciate the various legal concerns at issue when a magistrate judge is delegated authority to preside over closing argument. An attorney understands the importance of consistency in a trial proceeding, therefore, he is best equipped to make an immediate determination as to the risks or benefits of accepting a magistrate judge as a substitute for a district court judge.

[8] We recognize, however, that certain fundamental rights cannot be waived by a client's counsel alone. The Supreme Court in *Florida v. Nixon*, 543 U.S. 175 (2004), explained that:

> [C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment that they

---

²In *Peretz*, the Court also found that "a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence." *Peretz*, 501 U.S. at 936. Therefore, even if Gamba's counsel had not consented to Magistrate Judge Erickson's supervision of closing argument, any failure to object to Judge Molloy's absence may have been deemed a waiver of Gamba's right to an Article III judge at a critical stage of his felony criminal proceeding.

cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal. Concerning those decisions, an attorney must both consult the defendant and obtain consent to the recommended course of action.

*Id.* at 187 (internal citations and quotation marks omitted). *Gonzalez* reaffirmed *Nixon*'s distinction between certain fundamental rights and those rights that are "tactical" and do not require the defendant's express, personal consent. 128 S. Ct. at 1770-71. Although the Court in *Nixon* did not provide an exhaustive list of "basic trial rights," the Court did not list the right to an Article III judge presiding over closing argument as one of those rights, and it cannot reasonably be said that such a "right"—if there is one at all—rises to the level of such basic and fundamental rights as deciding whether to plead guilty or appeal one's conviction, particularly in light of *Peretz* and *Gonzalez*. Thus, Gamba's consent was not necessary for Sheehy to agree to Magistrate Judge Erickson presiding over closing argument.

**[9]** We recognize, as the Court suggests in *Gonzalez*, that *after* proceedings have commenced, the introduction of a magistrate judge into some aspect of the trial's proceedings may give rise to substantive difficulties that would not similarly arise during *voir dire*. 128 S. Ct. at 1771 ("This is not a case where the magistrate judge is asked to preside or make determinations after the trial has commenced and it is arguably difficult or disruptive for a district judge to review any objections that might have been made to the magistrate judge's rulings."). No such substantive difficulties arose in this case. The magistrate judge made no comments or rulings during the time he presided over the closing arguments. And, although jury instructions may come after closing arguments, Fed. R. Crim. P. 30(c), the district judge made a point to instruct the jury before leaving. In fact, it appears that the

magistrate judge in *Gonzalez* played a more active role in the portion of the proceedings he presided over than the magistrate judge in this case. 128 S. Ct. at 1770 ("[T]he presiding judge has significant discretion over the structure of *voir dire*. The judge may ask questions of the jury pool or, as in this case, allow the attorneys for the parties to do so.").

## B.    Additional Duties

In addition to finding the required consent, we must determine whether closing argument "bear[s] some relation to the specified duties" that magistrate judges are already authorized to perform. *Peretz*, 501 U.S. at 930 (internal quotation marks omitted). We hold that it does.

**[10]** In *Peretz*, the Court found that the Act's "additional duties clause permits a magistrate to supervise jury selection in a felony trial provided the parties consent." *Id.* at 933 (internal quotation marks omitted). The Court reasoned that the responsibility and importance of presiding over *voir dire* at a felony trial are comparable to the duties and responsibility that magistrate judges have in supervising entire civil and misdemeanor trials. *See id.*; *see also* 28 U.S.C. § 636(a) (with the parties' consent, a district court judge may delegate the supervision of entire civil and misdemeanor trials to a magistrate judge). The *Peretz* Court, as noted above, also encouraged the district courts to experiment in the use of magistrates to carry out functions not previously considered so long as the parties consent or the defendant fails to object. *See* 501 U.S. at 932-33.

**[11]** The reasoning the Court applied in *Peretz* equally extends to closing argument. If a magistrate judge can conduct jury selection, then, logically, he can preside over closing argument as well. A magistrate judge who conducts a civil or misdemeanor trial necessarily must preside over closing argument. Closing argument clearly bears a relation to specified duties magistrate judges are statutorily authorized to perform.

Accordingly, where defense counsel consents to proceed before a magistrate judge for tactical or strategic reasons, there is neither a constitutional nor a statutory impediment to delegating closing argument in criminal cases to magistrate judges. *See Reyna-Tapia*, 328 F.3d at 1121.

## C.   Ineffective Assistance of Counsel

**[12]** Since we hold that the magistrate judge had jurisdiction in this case because of defense counsel's consent due to trial strategy or tactics and the close relationship between presiding over closing argument and a magistrate judge's statutorily specified duties, Sheehy's conduct was not objectively unreasonable and Gamba cannot make the necessary showing of prejudice to show ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984).

## CONCLUSION

We affirm the district court's denial of Gamba's 28 U.S.C. § 2255 motion. Where the decision is one of trial tactics or legal strategy, defense counsel may waive the defendant's right to have an Article III judge preside over closing argument without the defendant's express, personal consent.

AFFIRMED.