NOT DESIGNATED FOR PUBLICATION

No. 127,259

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.K., a Minor Child.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Submitted without oral argument. Opinion filed September 20, 2024. Affirmed.

*Richard P. Klein*, of Lenexa, for appellant.

*Shawn E. Minihan*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before ARNOLD-BURGER, P.J., GREEN and COBLE, JJ.

PER CURIAM: A.L., the natural mother (Mother) of A.K., appeals the Johnson County District Court's order terminating her parental rights to A.K. Mother contends that the district court violated her statutory and constitutional rights by deciding parental unfitness on the State's proffer of evidence, rather than requiring an evidentiary hearing, when Mother did not personally attend the hearing but was represented by counsel. Finding her arguments unpersuasive, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Due to the nature of the legal issues raised in this appeal, we need not engage in an extended discussion of the circumstances leading to the termination of Mother's parental rights. Mother does not challenge the sufficiency of the district court's findings of unfitness or the court's conclusion that termination of parental rights was in the best

1

interests of A.K. Instead, Mother challenges only the procedural basis for the court's decision. Accordingly, we summarize the facts of the case, emphasizing its procedural history.

In March 2022, when A.K. was about three-and-a-half years old, the Kansas Department for Children and Families (DCF) took the child into protective custody after A.K. was found neglected by Mother and maternal grandmother while both women were heavily under the influence of drugs. The State filed a child in need of care (CINC) petition and the district court granted temporary custody of A.K. to DCF. A.K. was placed with her maternal grandfather and his current wife. Mother and Father declined to contest the allegations in the CINC petition, and the district court adjudicated A.K. as a child in need of care. Father later passed away and is not a party to this case.

Just over a year later, the State filed a motion to terminate Mother's parental rights. The State personally served her with the motion, and she attended a first-appearance hearing. The court then scheduled a hearing on the motion to terminate parental rights for June 13, 2023.

Mother failed to appear at the June 13 hearing, and the State requested permission to proceed by proffer of evidence at the next hearing date. The court asked Mother's appointed attorney, Tim Arehart, for his position on proceeding with a trial by proffer of evidence. When Arehart admitted that he had not had contact with Mother and did not object to a trial by proffer, the court scheduled the case for a trial by proffer six weeks later, on July 25.

On July 25, Arehart appeared on behalf of Mother, who did not personally appear. Arehart reported that Mother had contacted the social service agency, KVC, by phone and KVC sent a message to Arehart with Mother's contact information. Arehart called the telephone number provided and left a message regarding the hearing. He later received a

return call from a woman claiming to be Mother, reporting that she was currently undergoing drug treatment and trying to get her life together to be able to regain custody of A.K. Arehart advised the court that, because of these new circumstances, he believed it was his obligation as an advocate to object to proceeding by proffer. Toward the end of the hearing, Mother appeared. The court asked Mother some questions regarding her living conditions and where she was obtaining treatment. In Mother's presence, the court scheduled a prehearing conference for October 4 and termination hearing for November 1, 2023.

Mother did not appear at the prehearing conference on October 4. When discussing the termination hearing schedule, the court noted that Mother had not provided the court with a witness or exhibit list. Arehart told the court that he had not been in contact with Mother and had no objection to proceeding with a trial by proffer. Because Mother had previously sought to reschedule the proffer trial to accommodate the presentation of evidence, the district court set the case for an evidentiary hearing on November 1. The district court indicated that, in the event Mother appeared on that date, the termination hearing would proceed by evidentiary hearing, but if Mother failed to appear and her attorney "remain[ed] having not been directed to object to a proffer," the termination hearing would proceed by proffer.

On the date of the scheduled evidentiary hearing, Mother again failed to appear. Don Smith appeared on behalf of Mother, substituting for Arehart. Smith reported that Mother had been hospitalized with a heart condition and requested a continuance. The State objected, acknowledging Mother's health situation but arguing despite her health, the motion for termination had been on file for several months, there had been no substantial contact from Mother with DCF even prior to her hospitalization and despite the earlier continuances, and Mother had not completed UAs as required. The guardian ad litem reported that KVC followed up on Mother's claim during the July hearing regarding drug treatment and learned she was not a patient at the facility as she had

claimed at the prior hearing. No proof was provided by either the State or Mother regarding her alleged treatment.

On the bases argued by the State, the court denied the request for continuance. The State then renewed its request to proceed with a trial by proffer. The court questioned Smith, who advised the court that he had not been instructed by Mother to object to a proffer trial. Accordingly, the court considered the State's proffer of evidence regarding Mother's unfitness.

Highly summarized, the State proffered that Mother, who was homeless, had seldom visited with A.K. because of Mother's continual drug use and that Mother had not maintained regular contact with DCF or KVC. Mother had not completed any tasks assigned in her case plan for reintegration, other than to sign some releases and complete a substance abuse assessment. While the CINC case was pending, Mother gave birth to another child in Missouri. She left the hospital against medical advice, and the baby was taken into Missouri state custody after experiencing drug-withdrawal symptoms following birth.

After the State provided its proffer, the district court allowed Smith to present evidence on Mother's behalf, but Smith declined. Based on the State's proffer, the district court concluded that Mother was unfit by clear and convincing evidence under K.S.A. 38-2269(b)(3) (drug use rendering parent unable to care for child); (b)(4) (emotional neglect of child); (b)(7) (reasonable but unsuccessful efforts to rehabilitate family); (b)(8) (failure to adjust circumstances to meet needs of child); (c)(2) (failure to maintain contact with child); and (c)(3) (failure to carry out reasonable plan for reintegration). The court concluded Mother's circumstances were unlikely to change in the foreseeable future and termination of Mother's parental rights was in the best interests of A.K.

Mother timely appeals.

### THE DISTRICT COURT DID NOT COMMIT REVERSIBLE ERROR BY ALLOWING THE STATE TO SUPPORT ITS MOTION TO TERMINATE PARENTAL RIGHTS BY PROFFER

On appeal, Mother challenges the district court's use of a proffer by the State to support the termination of her parental rights. She raises two issues. First, she contends the district court violated the statutory requirements for a proffer under K.S.A. 38-2248(f). Second, she argues that the use of a proffer violated her constitutional right to procedural due process under the Fourteenth Amendment to the United States Constitution.

Worth noting are the issues Mother does not appeal. Mother did not challenge the district court's denial of her attorney's request for a continuance, either as an abuse of the court's discretion or as a violation of her right to procedural due process. She also does not challenge the ultimate sufficiency of the State's evidence—instead, she challenges only the procedure by which the information was presented. Consequently, these grounds for reversal have been waived or abandoned. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

I. *Procedural Concerns*

Before addressing the merits of Mother's arguments, as a threshold concern, we must examine whether her claims are properly before us. Although Mother's attorney objected to trial by proffer during one hearing, she admits she did not raise a constitutional due process issue in the district court. However, she maintains her claim meets an exception for our consideration of an unpreserved issue.

On our examination, we find several procedural hurdles hinder appellate review of Mother's arguments. Not only were her claims unpreserved, but they were likely invited

by Mother's counsel. Additionally, to the extent the trial by proffer deprived Mother of some procedural protection she would otherwise be entitled to receive, she appears to have waived the right through her counsel. Ultimately, however, her claims lack merit even if we choose to address them despite potential procedural obstacles.

A. *Contemporaneous Objection and Preservation*

K.S.A. 38-2249(a) provides that the rules of evidence found in article 4 of chapter 60 apply to proceedings under the Revised Kansas Code for Care of Children. K.S.A. 60-404, commonly referred to as the contemporaneous objection rule, provides:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

See *In re Kerns*, 225 Kan. 746, 749, 594 P.2d 187 (1979) (applying contemporaneous objection rule to hearsay admitted in a termination of parental rights proceeding); *In re K.H.*, 56 Kan. App. 2d 1135, 1140, 444 P.3d 354 (2019) (citing K.S.A. 38-2249[a]).

Mother now contends she objected to a trial by proffer, but this claim suggests a contorted view of the facts. At the November 1 hearing during which the State's proffer was made, Mother was not present, and her attorney clearly articulated his lack of objection to proceeding by proffer. Mother seeks to preserve her claim by referring to the July 25 hearing months earlier, when her attorney objected to a trial by proffer based on his conversation with Mother regarding her desire to regain custody of A.K. But this objection is not contemporaneous with the State's request to proceed to a trial by proffer on November 1.

At the November 1 hearing, Mother's attorney did not suggest his earlier objection continued absent Mother's revocation of that objection. Rather, counsel represented to the court that he had received no direction from Mother to object to a trial by proffer. So, not only does Mother's earlier objection fail to comply with the timeliness restrictions of K.S.A. 60-404, but it likewise does not comport with the specificity requirements of the rule. Mother never argued before the district court that its consideration of the State's proffer after her months-earlier objection violated K.S.A. 38-2248(f) or the Due Process Clause of the Fourteenth Amendment.

> "The purpose of the [contemporaneous objection] rule is self-evident: a timely and specific objection allows the district court to consider as fully as possible—in context—whether the evidence should be admitted, which reduces the chances of using tainted evidence and thus avoids possible reversal and a new trial." *State v. Showalter*, 318 Kan. 338, 345-46, 543 P.3d 508 (2024).

Mother's failure to object to the admission of the State's proffer under K.S.A. 38-2248(f) at the time of the proffer prevented the district court from considering the legal arguments Mother now raises and did not allow the court an opportunity to correct the errors she now alleges.

Not only is our ability to hear this appeal questionable on the contemporaneous objection bases, but grounds for reversing a judgment, including constitutional grounds, are not properly presented to a reviewing court for the first time on appeal. *State v. Hinostroza*, 319 Kan. 129, 142, 552 P.3d 1202 (2024); *In re N.E.*, 316 Kan. 391, 421, 516 P.3d 586 (2022) (citing *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 [2014]). There are recognized exceptions for appellate consideration of an issue raised for the first time on appeal, but a party advocating for the application of an exception must argue its applicability. Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36); *Hinostroza*, 319 Kan. at 142 (citing *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 [2018]).

Apparently believing the issue was properly preserved, Mother does not argue for the application of an exception warranting appellate review of her first argument, based on the statutory language of K.S.A. 38-2248(f). With respect to her second argument on due process, Mother contends that two exceptions apply: (1) The issue raises only a question of law on proved or admitted facts and is finally determinative of the case; and (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights.

We have considered constitutional claims involving child welfare proceedings for the first time on appeal. See *In re A.E.S.*, 48 Kan. App. 2d 761, 767, 298 P.3d 386 (2013) (considering vagueness and overbreadth challenges). Yet even if Mother demonstrates the applicability of an exception, our decision to review an unpreserved claim is a prudential one; we are under no obligation to consider a new claim even if an exception would support the decision to review it. *State v. Hillard*, 313 Kan. 830, 840, 491 P.3d 1223 (2021). And as our continued discussion shows, there are prudential reasons for declining to reach Mother's claims in this appeal, including the doctrines of invited error and waiver.

B. *Invited Error*

Counsel's affirmation of proceeding by proffer at the November 1 hearing may go beyond a failure to preserve the issue for appellate review to become invited error. At the hearing, the prosecutor stated he had discussed the option of a trial by proffer with both of Mother's attorneys, Arehart and Smith, and indicated that they posed no objections to that proposal. After hearing from the guardian ad litem (GAL), the court specifically asked for Smith's position on a trial by proffer. Smith affirmed what the prosecutor had reported—Mother had not directed him to object to a trial by proffer. Smith did not offer any reservations to his statement. Had Smith objected to a trial by proffer, the district

court would have erred in permitting the State to present its case by proffer rather than by presentation of evidence. But Smith did not object.

> "The invited error doctrine precludes a party who has led the district court into error from complaining of that error on appeal. There is no bright-line rule for the doctrine's application. Instead, appellate courts must carefully consider the party's actions and the context in which those actions occurred to determine whether that party in fact induced the district court to make the alleged error. [Citations omitted.]." *State v. Slusser*, 317 Kan. 174, 179-80, 527 P.3d 565 (2023).

As her appointed legal representative, Smith acted as Mother's agent, and his actions bind her "'in the absence of any showing to the contrary,'" of which we have none here. See *Stout v. KanEquip, Inc.*, 64 Kan. App. 2d 405, 414, 551 P.3d 260 (2024) (discussing *Overlander v. Overlander*, 129 Kan. 709, 712, 284 P. 614 [1930]).

Contrary to Mother's appellate argument, the previous objection to a proffer trial at the July 25 hearing is not evidence that Smith lacked authority to act on behalf of Mother at the November 1 hearing. A close examination of Arehart's statements at that hearing provide no indication that Mother directed Arehart to object to a proffer trial or that Mother indicated that Arehart should object to any future proffers. At the July 25 hearing, Arehart recounted his contact with Mother and then stated, "As such, Judge, I have to as an advocate for my client at this juncture object to the proffer trial and ask the Court that we proceed—well, more formally." Nothing within this statement suggests that Arehart was not authorized by Mother to make this decision on Mother's behalf at the July 25 hearing or the opposite decision on her behalf at the November 1 hearing.

Under these circumstances, by failing to lodge an objection to the State's proposed proffer when asked by the district court, Smith led the district court to proceed with the hearing on the State's motion for termination of parental rights by the State's proffer rather than by presentation of evidence. Had Smith objected, the district court presumably

would have followed the statutory guidance provided in K.S.A. 38-2248(f) and required the State to present its evidence of unfitness. But because Smith did not object, the court was led into the action Mother now contends was error.

C. *Waiver*

On a related note, Mother—through her counsel's actions—may have waived her right to require the State to present evidence of her unfitness. "Waiver is the voluntary and intentional relinquishment of a known right and the expression of an intention not to insist upon what the law affords." *Chelf v. State*, 46 Kan. App. 2d 522, 533, 263 P.3d 852 (2011). The record contains no evidence that Mother, personally or intentionally, relinquished her right to have the State prove her parental unfitness by clear and convincing evidence. See K.S.A. 38-2269(a); K.S.A. 38-2250. However, as discussed, Smith had the authority as her counsel to make decisions regarding Mother's representation. K.S.A. 38-2248(f) authorizes the district court to determine a parent's unfitness by proffer of evidence when a parent does not appear at the termination hearing and has not instructed counsel to object. But counsel for a parent may avoid a trial by proffer by appearing on behalf of the parent and objecting. Although the district court was prepared to hold an evidentiary trial, as demonstrated by its rescheduling of the earlier proffer hearing, Mother's counsel appeared at the termination hearing and did not object to proceeding by proffer.

Two Kansas appellate decisions illustrate waiver in a somewhat similar context. In *In re J.D.C.*, 284 Kan. 155, 159 P.3d 974 (2007), a mother appealed the termination of her parental rights, challenging the district court's admission of hearsay from her daughter as a violation of her constitutional rights to confront witnesses and due process. The court reasoned that J.D.C.'s mother could not articulate a due process or confrontation violation when the district court provided a meaningful opportunity for her to confront J.D.C., and her counsel, after consultation with his client, waived that chance. 284 Kan. at 165, 170.

10

And, in *In re M.C.*, No. 126,974, 2024 WL 2104511 (Kan. App. 2024) (unpublished opinion), a father challenged the proffer procedure authorized by K.S.A. 38-2248(f). Our court in *In re M.C.* conducted the due process balancing test established in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). But its conclusion clearly rested on principles of waiver. 2024 WL 2104511, at *6. ("Like *In re J.D.C.*, here the district court provided Father an opportunity to do more. Instead, he chose to leave the courthouse and permitted his attorney to accept the State's proffer. The district court provided Father with a meaningful opportunity to be heard in a meaningful way, but Father waived that opportunity.").

Although both *In re J.D.C.* and *In re M.C.* addressed waiver, they are distinguishable from the present case. First, in *In re J.D.C.*, the mother actually attended the termination hearing and consulted with her counsel before her counsel waived cross-examination of her daughter. 284 Kan. at 158-60, 170. In *In re M.C.*, the father chose to leave the courthouse and permitted his attorney to accept the State's proffer. 2024 WL 2104511, at *6. But here, we have neither an appearance nor clear waiver by Mother. According to Smith, Mother was hospitalized at the time of the termination hearing for heart issues, and the record does not clarify she was deliberately opting to avoid the hearing. Although Smith did not say he had lost contact with Mother, he did say the attorneys' information about her came only from speaking with the prosecutor and A.K.'s foster placement, which strongly suggests Mother had not consulted with her counsel on how to proceed.

Still, as previously noted, an attorney is presumed to have the authority to make decisions affecting a client's legal rights, absent evidence to the contrary. *Stout*, 64 Kan. App. 2d at 414. Although this authority may be sufficient to authorize the district court to proceed according to K.S.A. 38-2248(f), whether this presumptive authority is sufficient to waive Mother's due process challenge is more complicated.

11

An attorney may not waive personal, constitutional rights. See *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004); *State v. Larraco*, 32 Kan. App. 2d 996, 1001, 93 P.3d 725 (2004) ("While an attorney may make representations to the court which bind the client, defense counsel can only waive the rights of clients as long as those rights are not inherently personal, fundamental rights."). Personal constitutional rights in the criminal context include the decisions to plead guilty, to waive a jury trial, to testify in one's own defense, or to take an appeal. *Nixon*, 543 U.S. at 187. Other non-personal rights regarding the representation are left to the attorney. See *Gonzalez v. United States*, 553 U.S. 242, 251, 128 S. Ct. 1765, 170 L. Ed. 2d 616 (2008) (permitting magistrate judge to conduct jury selection without an explicit personal statement of consent).

The difficulty in this case is determining the nature of the waived right. If the waiver were viewed as depriving the State of its burden of proof, the right is likely a personal right that only Mother could waive. But this does not appear an accurate characterization of this right, because the district court is still required to determine whether the State's proffer would constitute clear and convincing evidence of unfitness. Instead, the waiver involved in a proffer appears to be a waiver of the presentation of actual evidence in support of the State's claims of parental unfitness. See *United States v. Gamba*, 541 F.3d 895, 900 (9th Cir. 2008) (constitutional rights may be waived as part of trial strategy). Yet the trouble with this position is that it is difficult to ascertain a trial strategy that would involve the complete lack of a defense.

Because—in contrast to *In re J.D.C.* and *In re M.C.*—the record contains no evidence that Mother participated in the decision to waive an objection to trial by proffer, and the waiver does not appear to be based in any cognizable legal strategy. Smith's failure to object to a trial by proffer more likely does not constitute waiver of Mother's constitutional due process rights.

12

D. *Procedural conclusion*

Overall, it may be that Mother's claims are more likely not properly heard, given each of the preceding procedural hurdles, and particularly when those obstacles are aggregated. However, we acknowledge the weighty nature of Mother's fundamental right to the care, custody, and control of her child, and the trend in many jurisdictions is to "require more, rather than less, due process" to parents in such circumstances. *In re J.D.C.*, 284 Kan. at 167. Under these facts—where Mother was hospitalized at the time of the termination hearing and the record is silent as to her prehearing communication with her counsel and thus her personal intentions—we take a more cautious approach and proceed to address the merits of Mother's claims.

II. *Statutory Compliance*

Addressing Mother's substantive claims, she challenges the application of K.S.A. 38-2248(f) to her case on two grounds, one statutory and the other constitutional. To potentially avoid deciding a constitutional issue, we address the statutory grounds first. See *Butler v. Shawnee Mission School District Board of Education*, 314 Kan. 553, 554, 502 P.3d 89 (2022) ("[Doctrine of judicial self-restraint known as constitutional avoidance] strongly counsels against courts deciding a case on a constitutional question if it can be resolved in some other fashion, especially when the question concerns the validity of a statute enacted by our coordinate branches of state government.").

Mother contends the district court violated its statutory authority under K.S.A. 38-2248(f) by holding a trial by proffer when Mother objected. We begin by again reviewing the operative statutory language:  "In evidentiary hearings for termination of parental rights under this code, the case may proceed by proffer as to parties not present, unless they appear by counsel and have instructed counsel to object." K.S.A. 38-2248(f).

13

When construing a statute, we attempt to give effect to the Legislature's intent. Usually, we ascertain that intent from the plain language of the statute, and only consult legislative history or canons of construction to interpret a statute when its language, read in the context of the entire statutory scheme, is ambiguous. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022).

In this context, K.S.A. 38-2248(f) simply contains no ambiguity. The district court has discretion to proceed with a termination hearing by proffer against a party absent from the hearing. See *State ex rel. Secretary of SRS v. Jackson*, 249 Kan. 635, 642, 822 P.2d 1033 (1991) (discussing use of "may" generally involves permissive, optional, or discretionary action). This discretion, however, is not unfettered, as the court loses its discretion to proceed via proffer if both of two conditions are met. First, the party against whom the proffer is presented must appear at the hearing by counsel. Second, counsel must have been directed by the absent party to object to proceeding by proffer. According to the statutory language, when both conditions are present the court is prohibited from exercising its discretion to consider a proffer at a termination hearing. K.S.A. 38-2248(f).

Here, the record demonstrates only one of those conditions was satisfied at the termination hearing on November 1. While Mother was represented at that hearing, her counsel informed the court that Mother had not instructed him to "oppose a proffer." But Mother argues that, because the record reveals she objected to proceeding by proffer on July 25, this earlier objection endured through all subsequent hearings without her affirmative withdrawal.

As stated in our preservation discussion above, the record before us does not clearly demonstrate Mother's communications to her attorney(s). Instead, the record only reveals that counsel at the July 25 hearing said he was compelled "as an advocate for [his] client" to object to a trial by proffer. Counsel did not indicate whether Mother had

14

instructed him to object or offer his reasons for the objection. This statement does not conclusively establish he objected at Mother's direction.

But, even if Arehart had acted at Mother's direction at the July 25 hearing, the record reveals a subsequent waiver of the objection at both the October 4 and November 1 hearings. Counsel advised the court during each later hearing that he had not been directed to object to a trial by proffer. Mother provides us with no authority for the proposition that an objection at one hearing extends to all future hearings absent a parent's personal, express withdrawal of the objection despite her counsel's unequivocal lack of objection. Without authority or an argument for the soundness of a position despite a lack of authority, we may treat the argument as waived or abandoned. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

If, as Mother implies, she had specifically directed her counsel to object to a trial by proffer at all hearings, her complaint then rests with the actions of her legal representatives, not the court's compliance with the statute. Absent some evidence to the contrary, a district court must presume that counsel acts with the authority to make decisions affecting the legal representation. *Stout*, 64 Kan. App. 2d at 414. Here, the record reveals nothing to rebut the presumption that Mother's legal counsel were acting within the scope of their representations.

Because both statutory conditions were not met, the district court acted within the scope of its discretion under K.S.A. 38-2248(f) when it allowed the State to present a proffer of evidence to establish Mother's unfitness. Mother did not attend the hearing, and counsel acknowledged that he had "not been instructed to oppose" a trial by proffer.

III. *Due Process*

In her second argument, Mother claims that, even if the district court complied with K.S.A. 38-2248(f), the statute is unconstitutional as applied to her because it violated her right to due process. She acknowledges we have previously decided this issue adversely to her position, citing three unpublished decisions, but suggests those cases were wrongly decided. *In re I.H.*, No. 113,662, 2016 WL 758460 (Kan. App. 2016) (unpublished opinion); *In re J.M.B.*, No. 112,578, 2015 WL 4460578 (Kan. App. 2015) (unpublished opinion); *In re K.M.*, No. 106,877, 2012 WL 2476996 (Kan. App. 2012) (unpublished opinion). Our research reveals at least three additional cases. See *In re M.C.*, 2024 WL 2104511; *In re B.S.*, No. 125,843, 2023 WL 4145322 (Kan. App. 2023) (unpublished opinion); *In re K.L.*, No. 124,873, 2022 WL 4391222 (Kan. App. 2022) (unpublished opinion).

Those appellate cases finding a violation of due process in expedited procedures for terminating parental rights involve distinguishing features not present in this case, such as a lack of notice. See, e.g., *In re J.L.*, 57 Kan. App. 2d 60, 61, 449 P.3d 762 (2019) (finding default judgment against father who failed to appear without proper statutory notice violated due process).

An appellate court exercises unlimited review of due process claims. *State v. Keys*, 315 Kan. 690, 700, 510 P.3d 706 (2022). The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. 315 Kan. at 700; *In re J.D.C.*, 284 Kan. at 166-67. The first step in considering a procedural due process claim is to decide whether a protected liberty or property interest is implicated. 284 Kan. at 166. Here, no one questions the fundamental liberty interest of a parent with respect to his or her children. See 284 Kan. at 166.

Once a party has established a liberty interest, that right cannot be infringed without procedural due process. To establish a claim for a violation of procedural due process, however, the party must establish the deprivation of a specific procedural protection to which he or she was entitled, using a balancing test articulated by the United States Supreme Court and restated by our Kansas Supreme Court. 284 Kan. at 166 (citing *Mathews*, 424 U.S. at 335).

> "The type and quantity of procedural protection that must accompany a deprivation of a particular property right or liberty interest is determined by a balancing test, weighing: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail." 284 Kan. at 166-67 (citing *Mathews*, 424 U.S. at 335).

We apply the *Mathews* test to determine whether the district court deprived Mother of her due process protections.

### A. *Individual Interest at Stake*

First, we acknowledge the initial *Mathews* factor does not require extensive analysis in this context, because we have already confirmed Mother's constitutionally protected liberty interest in the care, custody, and control of her minor child. The United States Supreme Court has recognized the fundamental liberty interest at stake in a parent's relationship with a child and that this considerable interest weighs in favor of significant procedural protections. *Santosky v. Kramer*, 455 U.S. 745, 761, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) ("[W]e have no difficulty finding that the balance of private interests strongly favors heightened procedural protections.").

B. *Risk of Erroneous Deprivation*

Our discussion of the second *Mathews* factor is less precise. In previous discussions of this factor by this court, many decisions do not focus on the specific procedural protection challenged, instead focusing on the parent's failure to attend the hearing as a principle of waiver. See *In re M.C.*, 2024 WL 2104511, at *6; see also *In re J.D.C.*, 284 Kan. at 170. But here, Mother argues the proffer procedure is insufficient to meet the necessary "clear and convincing" evidentiary standard and that the presentation of evidence is an "additional safeguard" to protect the considerable rights of parents. See K.S.A. 38-2269(a); K.S.A. 38-2271(a) (noting the "clear and convincing" evidentiary standard in a termination proceeding).

Mother contends that a proffer of evidence is not evidence and so a proffer cannot support a conclusion with clear and convincing evidence. She also points to what she believes is a statutory inconsistency between permitting a proffer of evidence in K.S.A. 38-2248(f) while requiring compliance with the rules of evidence under K.S.A. 38-2249(a).

Technically speaking, she is correct that a proffer is not evidence. A proffer is simply an offer or proposal as to what the evidence would be if presented through live testimony or properly admitted documents. See 75 Am. Jur. 2d, Trial § 346 (the "purpose of an offer of proof is to disclose to the court and opposing counsel the nature of the offered evidence").

Even so, her arguments raise no constitutional concerns. Within the confines of constitutional principles, the Kansas Legislature is authorized to expand or constrict the admissibility of evidence or determine what a court may consider in rendering its decision. *State v. Mercer*, 33 Kan. App. 2d 308, 313, 101 P.3d 732 (2004). So, although due process principles direct the State's burden of proof in a parental termination hearing,

see *Santosky*, 455 U.S. at 761-66, the Legislature may determine the rules by which evidence is admitted for the State to meet that burden, and control the circumstances under which those same rules are suspended. Mother cites no authority to suggest otherwise.

We do not find the risk of an erroneous deprivation of a parent's rights is significantly increased when the State presents a proffer of its evidence instead of the actual evidence. In either instance, the district court is still required to consider the information presented to determine whether that information provides clear and convincing evidence of parental unfitness and that the condition of unfitness is unlikely to change in the foreseeable future. K.S.A. 38-2269(a). Nothing within K.S.A. 38-2248(f) alleviates this responsibility. The State's burden of proof remains the same.

Mother claims, without support, that requiring the State to present its evidence offers a valuable additional procedural safeguard. But she does not articulate what advantage the presentation of evidence would provide her over the presentation of a proffer of the same evidence. A point incidentally raised without argument is deemed waived or abandoned. *Slusser*, 317 Kan. at 181. And it is difficult to perceive of a tangible benefit to Mother in requiring the State to present what is likely to be uncontested evidence. An attorney who submits to a trial by proffer presumably has no legal basis to challenge the State's evidence. If such a basis existed, the attorney would likely object to the trial by proffer so he or she could dispute the State's evidence. In this case, even if the State were constitutionally required to present its evidence, the evidence would likely go unchallenged. As stated in the discussion of harmless error below, it is difficult to perceive in this record how the presentation of evidence, versus a proffer, would have aided Mother's case.

The proffer procedure authorized by K.S.A. 38-2248(f) could create a risk of erroneous deprivation if a parent were both unable to attend the termination hearing and

unrepresented by counsel. Then, the implementation of a trial by proffer without any inquiry into the reasons why the parent was not represented at the hearing might implicate procedural due process concerns. See *In re B.H.*, 64 Kan. App. 2d 480, 491-501, 550 P.3d 1274 (2024). But these are not the facts of this case.

Here, Mother was represented by counsel. Counsel was offered an opportunity to present evidence to challenge the State's allegations of parental unfitness, and counsel chose to concede to trial by proffer. The potential that Mother has a quarrel with her counsel's strategic decision does not render the procedure outlined in K.S.A. 38-2248(f) insufficient. If the State had presented its evidence and Mother's attorney declined to cross-examine the State's witnesses or present witnesses or exhibits on Mother's behalf—which seems likely considering the lack of a witness or exhibit list in the district court record—the result would be the same as if the State proffered uncontested evidence. The risk of deficient representation for an absent parent is not reduced by the substitute procedural protection Mother advocates.

An appropriate proffer contains the substance of the expected testimony. See *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, Syl. ¶ 2, 822 P.2d 591 (1991); see also 75 Am. Jur. 2d, Trial §§ 362-63 (proffer must clearly state what it is intended to prove, including what the offered testimony will be, by whom and how made, and its purpose; it must be specific, definite, or concrete rather than general). When the State provides a proper proffer, the risk of a significant discrepancy between the proffer and the evidence supporting the proffer is minimal.

Under the narrow parameters with which K.S.A. 38-2248(f) authorizes the district court to proceed with a trial by proffer, the risk of erroneous deprivation is not significantly heightened by considering the State's proffer rather than its actual evidence. Furthermore, the substitute procedure suggested by Mother would not substantially reduce this risk of erroneous deprivation.

C. *The State's Interest in the Procedure*

Although Mother acknowledges the State's interest in resolving a case quickly to achieve stability for the subject children, she argues the State's interest in proceeding by proffer rather than presenting its evidence is insignificant, given the minimal administrative or fiscal burdens of doing so. And here, where the district court had set aside time for an evidentiary hearing in the event Mother appeared, and the State, the GAL, Mother's attorney, and witnesses were present, the difference in time between a proffer and presentation of the evidence in this case was likely a matter of a few hours. So, the imposition of additional time by requiring the State to present its evidence would not have created a meaningful burden.

Even so, after balancing the *Mathews* factors, Mother has not established that the application of K.S.A. 38-2248(f) deprived her of a specific procedural protection to which she was constitutionally entitled. The statute provided her a meaningful opportunity to be heard in a meaningful way—but her counsel declined to pursue the presentation of evidence allowed under the statute.

Finally, Mother makes a policy argument in favor of striking the proffer procedure authorized by K.S.A. 38-2248(f), contending that the standard is difficult to apply by the district courts. Difficulty in applying a statute is not a basis for declaring the statute unconstitutional or unlawful. This argument does not provide a legally cognizable basis for relief. See *State v. Spencer Gifts*, 304 Kan. 755, 765, 374 P.3d 680 (2016) (noting that, absent constitutional impediment, policy determinations are a legislative not a judicial function).

21

D.  *Harmless Error*

Finally, even if we were to conclude that the procedure authorized by K.S.A. 38-2248(f) violated procedural due process, the error is subject to review for harmlessness. *In re Henderson*, 306 Kan. 62, 76-77, 392 P.3d 56 (2017) (procedural due process violation subject to harmless error analysis). A constitutional error is rendered harmless only when a reviewing court is persuaded beyond a reasonable doubt by the party benefitting from the error—the State in this case—that the error did not affect the outcome of the proceedings. Stated differently, we must be persuaded that the error had no reasonable possibility of affecting the judgment. See *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011).

The State's proffer in support of terminating Mother's parental rights revealed that Mother had done virtually nothing toward reintegrating with her child for a year. She was still using methamphetamine and other drugs. While the CINC case was pending, she gave birth to another child that had been taken into Missouri state custody. She was homeless. She had not maintained contact with the social service agencies or her own attorney. She refused to seek mental health treatment because she denied that she possessed a mental health disorder. She failed to successfully complete drug treatment. Mother has presented no proffer of evidence to the district court or to this court that would undermine the State's proffer or indicate that Mother was able to change her circumstances to provide for the physical, emotional, and mental needs of A.K. within the foreseeable future.

Similarly, we possess no information from which to conclude that, if Mother had been given a full opportunity to have an evidentiary hearing, she would have presented evidence to undermine confidence in the district court's findings of parental unfitness by clear and convincing evidence. The error, if any, was constitutionally harmless.

IV. *Facial Challenge to K.S.A. 38-2248(f)*

In a separate, undeveloped argument, Mother suggests K.S.A. 38-2248(f) is unconstitutional on its face. The argument appears to have been lifted from another legal document. The argument refers to "Appellant" with a masculine pronoun and suggests that a proffer should not be applied to a parent who has been engaged in the case plan. This argument does not appear to reflect Mother's participation. More importantly, until this argument Mother has provided no indication that she was making a facial challenge to K.S.A. 38-2248(f). She began her constitutional argument with the following statement: "If the Court believes the proffer of evidence in this case followed the appropriate statutory procedures, the mother argues that those procedures violate *her* due process rights and that the statute is unconstitutional *as applied to her*." (Emphases added.)

We find Mother's facial constitutional challenge insufficiently briefed. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (Issues not adequately briefed are deemed waived or abandoned.). Even so, her facial challenge is unpersuasive because as the party challenging the statute, she must establish that the statute is unconstitutional under any circumstance, not just the circumstances present in this case. See *State v. Ryce*, 303 Kan. 899, 915, 368 P.3d 342 (2016) (citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 [1987]). But contrary to her argument, as noted above, this court has upheld K.S.A. 38-2248(f) in many other contexts.

V. *Conclusion*

Despite procedural concerns which could prohibit our review, even on our examination of the merits of Mother's arguments, we find her claims unconvincing. Even if the district court's acceptance of Mother's counsel's lack of objection was in error—

23

which we do not determine it was—the error is harmless. And we do not find her facial constitutional challenge to K.S.A. 38-2248(f) persuasive. Her attorney was present at the termination hearing and did not object to proceeding by proffer of evidence, and this fact dismantles her claims.

Affirmed.