PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2125
_____

UNITED STATES OF AMERICA

v.

TAHJAIR DORSEY,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 4-22-cr-00056-001
District Judge:  Honorable Matthew W. Brann
_____

Argued April 18, 2024

Before: HARDIMAN, PHIPPS, and SMITH, *Circuit Judges*

(Filed: June 24, 2024)


Jason F. Ullman      [ARGUED]
Office of Federal Public Defender

100 Chestnut Street
Suite 306
Harrisburg, PA 17101
          *Counsel for Appellant*

Patrick J. Bannon
Office of United States Attorney
235 N Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

William Glaser      [ARGUED]
United States Department of Justice
Criminal Division
Room 1264
950 Pennsylvania Avenue NW
Washington, DC 20530

Carlo D. Marchioli
Office of United States Attorney
Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 N 6th Street, 2nd Floor
P.O. Box 202
Harrisburg, PA 17102
          *Counsel for Appellee*

_____


OPINION

_____

SMITH, *Circuit Judge*.

Tahjair Dorsey appeals his conviction for possession of a firearm by a convicted felon pursuant to 18 U.S.C. § 922(g)(1). He argues that § 922(g)(1) is unconstitutional as applied to him under the Second Amendment. Yet Dorsey did not raise an objection on Second Amendment grounds at any stage of the District Court proceedings. We therefore review for plain error, and because Dorsey has not shown that any error here was plain, we will affirm.

I.

In September 2020, Dorsey pleaded guilty to carrying a firearm without a license in violation of 18 Pa. Cons. Stat. § 6106(a)(1). The firearm, a Glock 19 9mm handgun with a fully loaded, extended magazine holding 30 rounds, had been stolen from someone in Georgia. Under Pennsylvania law, a violation of § 6106(a)(1) is a felony conviction punishable by up to seven years' imprisonment. 18 Pa. Cons. Stat. § 1103(3). Dorsey was sentenced to serve between six and twenty-three and a half months in prison and was paroled on June 1, 2021.[1]

In August 2021, members of the Lycoming County Narcotics Enforcement Unit and agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives began to investigate suspected gang activity in Williamsport, Pennsylvania. On August 30, 2021, agents observed Dorsey and another individual leaving a residence which was being monitored as a part of that investigation. The pair then entered a vehicle. When officers stopped the vehicle, Dorsey fled on foot. He was soon apprehended and officers recovered a Smith

---

[1] After his arrest for the instant offense in August 2021, the state trial court revoked his parole.

3

& Wesson 9mm handgun nearby. The handgun, which had been stolen from someone in North Carolina, resembled a handgun that Dorsey had been depicted holding in a post on social media. Subsequent testing revealed that Dorsey's DNA was on the handgun.

On February 10, 2022, a federal grand jury returned a one-count indictment against Dorsey charging him as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). As set forth below, our decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc) controls the outcome of this case. A petition for rehearing en banc in *Range* was granted on January 6, 2023. A full month after that petition was granted, on February 7, 2023, Dorsey pleaded guilty pursuant to a written plea agreement. On June 6, 2023, we issued our en banc decision in *Range*. *Id.* at 96. The very next day, the District Court sentenced Dorsey to time served and three years of supervised release.[2] At no time, from his indictment to his sentencing—a period just shy of 16 months—did Dorsey raise an objection to the constitutionality of § 922(g)(1). Dorsey timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291. Because Dorsey did not raise his Second Amendment challenge before the District Court, we review for plain error pursuant to Federal Rule of Criminal Procedure 52(b).

---

[2] Although Dorsey's guideline range was 15-21 months, at the time of sentencing he had already been incarcerated for 21 months and 8 days.

4

To prevail under the plain-error framework, an appellant must satisfy the four-prong test set forth in *United States v. Olano*, 507 U.S. 725, 732 (1993). The *Olano* test requires an appellant to show (1) a legal error (2) that is plain and (3) that has affected his substantial rights. *Id.* at 732-33; *see also Puckett v. United States*, 556 U.S. 129, 135 (2009). If an appellant satisfies the first three *Olano* prongs, the court has discretion to correct the error if (4) it seriously affects the fairness, integrity, or reputation of judicial proceedings. *Olano*, 507 U.S. at 732.

A legal error is a "[d]eviation from a legal rule" that has not been waived. *Id*. at 732-33.[3] An error is "plain" if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135 (citation omitted). In "most cases," *Olano*'s third prong, requiring an appellant to show that the error affected his substantial rights, "means that the error must have been prejudicial: It must have affected the outcome of the

---

[3] The *Olano* Court began by noting that rights, constitutional or otherwise, can be forfeited by a failure to timely raise the right before the judge handling a case. 507 U.S. at 731. Thus, Rule 52(b) "provides a court of appeals a limited power to correct errors that were *forfeited* because not timely raised in district court." *Id.* (emphasis added); *see also Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017) ("The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right.") (cleaned up).

district court proceedings." *Olano*, 507 U.S. at 734.[4] Our inquiry at the fourth prong of the *Olano* test, into the influence of the error on the fairness, integrity, or reputation of judicial proceedings, is "case[] specific and fact[] intensive." *Puckett*, 556 U.S. at 142.

"Meeting all four prongs" of the *Olano* test "is difficult, as it should be." *Puckett*, 556 U.S. at 135 (cleaned up). At the same time, even though "Rule 52(b) is permissive, not mandatory, it is well established that courts *should* correct a forfeited plain error that affects substantial rights" if the fourth prong of *Olano* is satisfied. *Rosales-Mireles v. United States*, 585 U.S. 129, 137 (2018) (cleaned up) (emphasis added).

Yet courts must still bear in mind that the Supreme Court has "repeatedly cautioned" against any "'unwarranted extension' of the authority granted by Rule 52(b)," noting that the Rule "strikes" a "careful balance . . . between judicial efficiency and the redress of injustice." *Puckett*, 556 U.S. at 135 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). And though it is not entirely uncommon for a court to

---

[4] There is also a "limited class" of "structural errors," *Johnson v. United States*, 520 U.S. 461, 468-69 (1997), that "can be corrected regardless of their effect on the outcome," *United States v. Cotton*, 535 U.S. 625, 632 (2002) (quoting *Olano*, 507 U.S. at 735). "Structural errors are a very limited class of errors that affect the framework within which the trial proceeds such that it is often difficult to assess the effect of the error." *United States v. Marcus*, 560 U.S. 258, 263 (2010) (cleaned up and internal citations omitted). The Supreme Court has found structural error in cases involving, *inter alia*, total deprivation of trial counsel, lack of an impartial trial judge, and violation of the right to a public trial. *Id.* (collecting cases).

determine, on plain error-review, that a constitutional error requiring correction has occurred,[5] we must approach constitutional challenges to statutes with particular care.[6]

---

[5] *See, e.g.*, *United States v. Woods*, 14 F.4th 544, 559-60 (6th Cir. 2021) (convictions for both attempted murder and assault with a dangerous weapon, under Violent Crimes in Aid of Racketeering Act, based on same shooting at same victim at same moment violated Double Jeopardy clause and was plain error); *United States v. Morrissey*, 895 F.3d 541, 547-49 (8th Cir. 2018) (failure of district court to instruct the jury that it could not convict defendant for both possession and receipt of child pornography based on the same facts violated Double Jeopardy clause and was plain error); *United States v. Suarez*, 879 F.3d 626, 635-38 (5th Cir. 2018) (imposition of ten-year mandatory minimum sentence when fact in issue not submitted to a jury and found beyond a reasonable doubt violated defendant's Sixth Amendment rights and was plain error); *United States v. Cesare*, 581 F.3d 206, 207 (3d Cir. 2009) (entry of dual convictions for bank robbery and armed bank robbery arising from the same offense violated Double Jeopardy clause and was plain error); *United States v. Bruno*, 383 F.3d 65, 78, 81 (2d Cir. 2004) (admission of hearsay testimony which violated the Confrontation Clause was plain error).

[6] In *Government of Virgin Islands v. Vanterpool*, 767 F.3d 157 (3d Cir. 2014), we denied a First Amendment challenge to a Virgin Islands statute, noting that, although we had not "expressly commented" on the issue, our sister circuits had regularly "denied relief when an appellant . . . raised a constitutional challenge to a statute for the first time on appeal." *Id.* at 162.

Federal statutes are, after all, presumed to be constitutional. *Reno v. Condon*, 528 U.S. 141, 148 (2000).

III.

Dorsey has not shown plain error because he cannot satisfy the second prong of *Olano*. That is, even if Dorsey's conviction can be said to have violated the Second Amendment, any such error here was not plain.

This Court's en banc decision in *Range*, as noted above, controls the outcome of this case. Dorsey argues that the unambiguous rule announced by *Range* is that § 922(g)(1) cannot be constitutionally applied to an individual who has a single, non-violent felony conviction regardless of the nature and timing of the prior offense and the defendant's parole status at the time of the offense conduct. That argument overstates the breadth of our holding. *Range* held only that disarming an individual with a single, almost-thirty-year-old criminal conviction for food stamp fraud was not consistent with the Second Amendment. *See* 69 F.4th at 98-99, 106. Because Dorsey cannot show that it is beyond dispute that he is similarly situated to Range for Second Amendment purposes, any Second Amendment error here was not plain.

A.

To repeat: the second prong of the *Olano* test requires us to determine whether an error is "plain—that is to say, clear or obvious." *United States v. Aguirre-Miron*, 988 F.3d 683, 688 (3d Cir. 2021) (quoting *Rosales-Mireles*, 585 U.S. at 134). An error is "clear or obvious" when the underlying legal proposition is not "subject to reasonable dispute." *Puckett*, 556

U.S. at 135. Whether an error is plain must be evaluated based on the state of the law while the case under review is on appeal. *United States v. Henderson*, 64 F.4th 111, 120 (3d Cir. 2023).

The parties agree that two cases govern the outcome of this appeal: *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc).[7] *Bruen* represented a sea-change in Second Amendment jurisprudence. In *Bruen*, the Supreme Court rejected means-end scrutiny in the Second Amendment context and articulated a new, two-step analytical approach for courts confronting such challenges. *See Bruen*, 597 U.S. at 22-23; *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 129 (3d Cir. 2024).

Under *Bruen*'s first step, a court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 17. If the court concludes that the challenger is among "the people" who have

---

[7] Dorsey's counsel also suggested at oral argument that the Court should look to then-Judge Barrett's dissenting opinion in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) (Barrett, J., dissenting). Yet that out-of-circuit case predates *Bruen* and is only a dissent. It can hardly be relied upon to demonstrate that the District Court's purported error was obvious.

Moreover, though Dorsey's counsel referenced both *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc), and Judge Hardiman's concurrence in that case, *Binderup* was abrogated by *Bruen*. *Range*, 69 F.4th at 100-01. Thus, neither the majority opinion nor Judge Hardiman's concurrence can be relied upon to support a conclusion that plain error occurred.

Second Amendment rights and the text of the Second Amendment applies to the conduct at issue, the Constitution presumptively protects that conduct. *See id.*; *Lara*, 91 F.4th at 129; *Range*, 69 F.4th at 101-03.

At *Bruen*'s second step, the court must determine whether the restriction in question "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. The Government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical analogue, not a historical twin.'" *Range*, 69 F.4th at 103 (quoting *id.* at 30).

Beyond setting forth the proper analytical framework for evaluating Second Amendment objections, *Bruen* tells us little about how to evaluate Dorsey's challenge. *Bruen* involved a state law requiring applicants for unrestricted concealed-carry licenses to demonstrate a special need for self-defense. 597 U.S. at 8-13. Thus, *Bruen*'s step-two analysis focused on whether the Government's proffered historical analogues could support restrictions on public carry. *See id.* at 39-70. *Bruen* said nothing about *who* may be disarmed and *for how long* that disarmament may last. *See id.* at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm.").

Thus, *Bruen* decided a "where" question rather than a "who" question. *See Range*, 69 F.4th at 100. In *Range*, this court was required to adjudicate a "who" question. The issue in *Range* was whether § 922(g)(1) could constitutionally be applied to an individual with a single, nearly thirty-year-old criminal conviction for making a false statement to obtain food

stamps in violation of 62 Pa. Stat. Ann. § 481(a). *Id.* at 98. We held that it could not. *Id.* at 106.

Applying the *Bruen* standard, we first concluded that Range was among "the people" who have Second Amendment rights, despite his prior conviction, and that Range's request "to possess a rifle to hunt and a shotgun to defend himself at home [] tracks the constitutional right as defined by *Heller*." *Id.* at 101-03 (citing *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)).

At the second step of the *Bruen* test, we held that the Government failed to carry its burden to show that § 922(g)(1), *as applied to Range*, "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 103-06.[8] We declined to set forth a "touchstone" attribute that the Government could rely upon to justify disarmament, such as dangerousness, noting that the Government failed to carry its burden as to Range, whether the analysis was "grounded in dangerousness or not." *Id.* at 104 n.9. We further emphasized that our decision was a "narrow one" because the Government failed to show that the Republic has a longstanding history and tradition of depriving "people like Range" of their firearms. *Id.* at 106.

---

[8] We concluded that the Government's proffered analogues—status-based restrictions disarming Loyalists and Native Americans at the Founding, the historical practice of capital punishment, and forfeiture laws—were insufficient to carry the Government's burden given the specifics of Range's situation. *Id.* at 104-06.

B.

*Range* is of little aid to Dorsey unless he can show that there can be no reasonable disagreement as to whether he is similarly situated to the appellant in *Range* for Second Amendment purposes. He cannot make that showing for at least three reasons.

As a starting point, Dorsey's statute of conviction and the nature of his prior offense are meaningfully different from Range's. Dorsey was convicted of violating a state firearm law, while Range was convicted of food stamp fraud. The former represents a failure to comply with a state law regulating the possession and use of deadly weapons; the latter is essentially a crime of dishonesty. It is far from clear that those offenses are similar for Second Amendment purposes. Moreover, *Range* explicitly left open the possibility that the Second Amendment permits an individual convicted of a "dangerous" felony to be disarmed. *Id.* at 104 n.9. Failure to comply with a state firearm law is at least arguably dangerous. Dorsey's disarmament on the basis of his firearm offense is therefore not glaringly inconsistent with *Range*.

Dorsey's prior conviction is also far more recent than Range's prior conviction. Dorsey's prior conviction was entered less than four years ago, while Range's prior conviction was nearly thirty years old at the time of this Court's en banc decision. *See id.* at 98. Thus, it is not obvious, based on *Range*, that the Second Amendment forbids a legislature from constitutionally disarming a felon only four years after the entry of his conviction.[9]

_____

[9] Because *Range* was decided on a narrow, as-applied basis, the relevance, for Second Amendment purposes, of the

Finally, and significantly, Dorsey was on state parole at the time of the offense conduct. "A person . . . on parole . . . is in fact still serving out his sentence." *Commonwealth v. Frankenhauser*, 375 A.2d 120, 122 (Pa. Super. Ct. 1977) (citing *Commonwealth ex rel. Banks v. Cain*, 28 A.2d 897 (Pa. 1945)). "Parolees are in a position different from the general population because they are still subject to an extant term of imprisonment." *Lee v. Pa. Bd. of Prob. & Parole*, 885 A.2d 634, 638 (Pa. Commw. Ct. 2005). Range himself was not serving an ongoing term of parole or its federal counterpart, supervised release. Thus, our decision in his case provides no guidance on the relevance of an undischarged criminal sentence to the constitutionality of a felon possessing a firearm. We conclude that, at the very least, there can be reasonable debate as to whether an individual who has been released from prison but is still serving his criminal sentence can be disarmed consistent with the Second Amendment. Such uncertainty demonstrates that any error here was not plain.

\*\*\*

Given the sea-change effected by *Bruen*, and considering the narrowness of our decision in *Range*, we conclude that there can be reasonable debate as to whether the Second Amendment permits disarmament of an individual with a four-year-old conviction for possession of a firearm

---

interplay between the nature of a prior conviction and its recency is unclear. Though *Range* held that a legislature cannot constitutionally disarm an individual with a single conviction for food stamp fraud thirty years after his conviction, it said nothing about whether an individual with a more serious (or more dangerous, or more violent) conviction could be disarmed for the same (thirty-year) period. *See* 69 F.4th at 106.

without a license and who was laboring under a criminal sentence at the time of the offense conduct. Any Second Amendment error inherent in Dorsey's conviction therefore was not plain. We will affirm.