**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1812

_____

UNITED STATES OF AMERICA,

v.

RAYMON WALTERS,
                                        Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 1:19-cr-00176-001)
District Judge:  Honorable Robert B. Kugler

_____

Argued: February 27, 2025

Before: RESTREPO, MONTGOMERY-REEVES
and AMBRO, *Circuit Judges*.

(Filed: September 4, 2025)

Richard Coughlin          **[ARGUED]**
Law Office of Caroline Goldner Cinquanto
3331 Street Road
2 Greenwood Square, Suite 450
Bensalem, PA 19020

*Counsel for Appellant Raymon Walters*

Mark E. Coyne
John F. Romano          **[ARGUED]**
Office of United States Attorney
970 Broad Street

Room 700
Newark, NJ 07102

*Counsel for Appellee United States of America*

———————————

OPINION OF THE COURT

———————————

MONTGOMERY-REEVES, *Circuit Judge.*

Woven into the Nation's fabric are the guarantees of life and liberty. The Sixth Amendment helps safeguard these guarantees by, among other things, providing a criminal defendant the "Assistance of Counsel for his defence." U.S. CONST. amend. VI. "Assistance" is the key to the right, and the Supreme Court consistently reminds us that the accused need not always defer to counsel. Nonetheless, over the last century, the Supreme Court has steadily expanded the role that counsel plays in criminal trials. In this appeal, we must test the boundaries of this expansion in the context of counsel's ability to enter stipulations that concede elements of the charged offense. We hold that the accused decides whether to concede elements of the charged offense that are substantive or relate to the accused's criminal behavior. And even if the accused's decision stands in stark contrast to counsel's professional judgment, the Sixth Amendment requires that counsel honor the decision. Thus, the District Court correctly held that defense counsel could not enter a stipulation that conceded substantive elements of the charged offense over the accused's objection, and it did not err in admitting the government's proffered evidence, which was necessary to prove those substantive elements.

We also must determine whether it was plainly unconstitutional to convict Appellant Raymon Walters of unlawfully possessing a firearm as a felon. We hold that 18 U.S.C. § 922(g)(1) is not clearly unconstitutional as applied to Walters, an individual with numerous interactions with law enforcement since reaching the age of majority, including convictions for drug distribution. Thus, we will affirm the District Court's judgment of conviction.

2

## I.    BACKGROUND

Walters is no stranger to law enforcement. In 2005, at 19 years old, Walters was convicted of disorderly conduct. Every year afterward until 2013, Walters was arrested, convicted, or incarcerated. In fact, Walters had racked up nine criminal convictions by that time; three of those convictions were for drug distribution; and he was sentenced to two multiple-year stints of imprisonment for two separate convictions.

Walters next encountered law enforcement in 2018 when Camden police officers received a call that a man brandished a firearm at an unknown victim. After arriving on the scene, two officers spotted Walters, approached him, and started a conversation. But soon after the conversation began, Walters took off running. The officers chased Walters, and during the chase, one officer saw Walters discard a handgun. Ultimately, the officers arrested Walters and transported him to the police station. During the transport, Walters made various statements about the officers catching him with his "strap," which is shorthand for a handgun.

Walters was indicted for unlawful possession of a firearm by a felon under 18 U.S.C. § 922(g)(1). He exercised his right to a jury trial and pleaded not guilty. During the discovery process, the government presented him with a stipulation (the "Stipulation"), which provided:

> Prior to May 21, 2018, the defendant, Raymon Walters, was convicted of a crime punishable by imprisonment for a term exceeding one year, in a court in the State of New Jersey, and on May 21, 2018, Raymon Walters knew that he had been so convicted and that the conviction exposed him to a term of imprisonment exceeding one year.

Supplemental Appendix at 1. Walters instructed his counsel not to sign the Stipulation.

At the pretrial conference, Walters's counsel informed the District Court that he "ha[d] spoken to Mr. Walters a

number of times" and Walters "d[id] not want . . . to stipulate to the contents of the . . . [S]tipulation. [Walters] made that very clear." Appendix 317 (hereinafter "App. __"). But Walters's counsel planned to sign the Stipulation despite his client's objection because, as the attorney, he thought he could unilaterally enter stipulations on behalf of his client.

Initially, the government stated that it would accept the Stipulation, but upon reflection, changed its position. It was "concerned that a defense attorney [was] overriding a defendant's desire to not enter the [S]tipulation, which includes a statement about his mental state that he knew that he was in the category of defendants who were not allowed to have a gun." App. 325 The District Court agreed with the government and did not allow Walters's counsel to sign the Stipulation over Walters's objection. The District Court then allowed the government to introduce Walters's two 2011 drug-related convictions and jail records into evidence.[1] After a two-day jury trial and less than an hour of deliberations, the jury returned a guilty verdict. The District Court sentenced Walters to 82 months' imprisonment. He timely appealed.

## II.    JURISDICTION AND STANDARDS OF REVIEW

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. As for Walters's challenge to the introduction of prior conviction evidence, we review the District Court's order "for abuse of discretion." *United States v. Gallman*, 57 F.4th 122, 126 (3d Cir. 2023) (citing *United States v. Starnes*, 583 F.3d 196, 213–14 (3d Cir. 2009)). We review Walters's Second Amendment challenge, which he did not raise before

---

[1] In a passing footnote reference, Walters contends that introducing certain jail records violated the District Court's motion in limine ruling. The issue was not preserved below or on appeal. *See John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered [forfeited]." (citing *Pennsylvania. v. HHS*, 101 F.3d 939, 945 (3d Cir. 1996))). Therefore, we will not assess whether Walters's prior convictions were admitted in error.

the District Court, for plain error under Federal Rule of Criminal Procedure 52(b).

## III. DISCUSSION

Walters challenges his judgment of conviction in two ways. First, he argues that the District Court abused its discretion by admitting his prior conviction history despite counsel's offer to stipulate that he was a felon and knew that he was a felon at the time of the crime.[2] Second, Walters argues that his conviction was unconstitutional because 18 U.S.C. § 922(g)(1), as applied to him, violates the Second Amendment. In response, the government argues that the Stipulation, if entered, would have been invalid because counsel was not permitted to enter it over Walters's express objection. And the government argues that it is not plain that § 922(g)(1) was unconstitutionally applied to Walters.

To determine whether to affirm Walters's judgment of conviction, we will first analyze whether counsel had the authority to enter the Stipulation and whether the District Court abused its discretion by admitting Walters's prior conviction history. Second, we will address whether § 922(g)(1) was constitutionally applied to Walters.

### A. Stipulations Regarding the Accused

To determine whether the District Court erred in failing to accept the Stipulation, we examine who—counsel or the accused—had the final say over entering the Stipulation that conceded two elements of the charge against Walters—felon status and mens rea. To answer this question, we first delineate the various trial responsibilities that are delegated between trial counsel and the accused. Second, we determine whether stipulating to elements of the charged offense falls within the authority given to counsel. Third, we discuss whether the District

---

[2] While it does not affect our review, we note this case's unusual posture. Although the District Court disregarded the desire of Walters's counsel to sign the Stipulation in favor of Walters's own choice not to sign, Walters now argues that the District Court should not have listened to him and should have allowed his trial counsel to override his preference.

5

Court abused its discretion by admitting evidence of Walters's prior convictions.

### 1. Trial responsibilities of counsel and the accused

The Sixth Amendment in the Bill of Rights guarantees that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. But from English common law to the Founding, "even where counsel was permitted, the general practice . . . [was] self-representation." *Faretta v. California*, 422 U.S. 806, 828 (1975). Counsel's assistance was limited to cross-examination and answering legal questions; issues of fact were reserved solely for the accused. *See, e.g.*, Erica J. Hashimoto, *Resurrecting Autonomy: The Criminal Defendant's Right to Control the Case*, 90 B.U. L. Rev. 1147, 1167 (2010); William M. Beaney, *The Right to Counsel in American Courts* 21–22, 24–25 (1955).

Over time, the general practice shifted, and defense counsel gained more trial responsibilities. In the 20th century, the Supreme Court recognized that "[t]he right to counsel is a fundamental right of criminal defendants[] [which] assures the fairness, and thus the legitimacy, of our adversary process," *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)), and that "there is as much necessity for counsel to investigate matters of fact, as points of law, if truth is to be discovered," *Powell v. Alabama*, 287 U.S. 45, 63 n.1 (1932) (quoting 2 Z. Swift, A System of the Laws of the State of Connecticut 398–99 (1796)). *See also Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("[T]he lawyer has—and must have—full authority to manage the conduct of the trial" because "[t]he adversary process could not function effectively if every tactical decision require[s] [the accused's] approval.").

As counsel's role expanded, courts sought to strike a harmonious balance between the accused's autonomy over his defense and counsel's ability to effectively achieve the accused's desired outcome. To achieve this balance, the Supreme Court delegated *strategic* decisions to lawyers. *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018). And it reserved defense *objectives* for the accused. *Id.* at 417 ("[I]t is the defendant's prerogative . . . to decide on the objective of his defense."). But

these designations naturally lead to two questions: (1) what is a strategy, and (2) what is an objective? The Supreme Court has provided guidance.

Strategic decisions might include "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *Id.* at 422 (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)). This is not an exhaustive list, however. "Among the decisions that counsel is free to make unilaterally are the following: choosing the basic line of defense, moving to suppress evidence, delivering an opening statement and deciding what to say in the opening, objecting to the admission of evidence, cross-examining witnesses, offering evidence and calling defense witnesses, and deciding what to say in summation." *Id.* at 436 (Alito, J., dissenting) (citing *New York v. Hill*, 528 U.S. 110, 114–15 (2000)). Likewise, counsel can control scheduling determinations, *Hill*, 528 U.S. at 115, permit a magistrate judge to preside over jury selection, *Gonzalez*, 553 U.S. at 250, and decide what arguments to advance on appeal, *Garza v. Idaho*, 586 U.S. 232, 240 (2019) (citations omitted). In essence, the method of presenting the defense belongs to counsel.[3]

"Objectives" might include "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *McCoy*, 584 U.S. at 422 (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Circuit courts have also reserved waiver of the Sixth Amendment right to confront witnesses for the accused. *See United States v. Stephens*, 609 F.2d 230, 232–33 (5th Cir. 1980) ("[C]ounsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence," but only if "the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy.").[4]

---

[3] While these decisions belong to counsel, counsel still has a duty to consult his client of "important decisions." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[4] *See also Janosky v. St. Amand*, 594 F.3d 39, 48 (1st Cir. 2010); *United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999);

Most recently, in 2018, the Supreme Court added another objective to the list—whether to maintain innocence or concede guilt. *McCoy*, 584 U.S. at 423. In *McCoy v. Louisiana*, the Supreme Court considered whether the trial court violated the Sixth Amendment by allowing McCoy's counsel to tell the jury—over McCoy's "vociferous[]" objection—that McCoy "committed three murders" during the guilt phase of a capital murder trial. *Id.*, 584 U.S. at 417. The Supreme Court held that McCoy had the right to prohibit counsel from admitting guilt, even though counsel thought confessing guilt provided McCoy the best chance to avoid the death penalty. *Id.* at 424.

> With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.

*Id.* at 417–18. In coming to its conclusion, the Supreme Court sifted through the trial roles delegated to counsel and those reserved for the accused and concluded that the decision to concede *all* elements of the charged offense is an objective that resides with the accused. *Id.* at 422–24. Thus, the decision "to maintain innocence of the charged criminal acts" is a trial "objective" and counsel "may not override [that authority] by conceding guilt." *Id.* at 423.

### 2. Decision-making authority to stipulate to individual elements of the charged offense

---

*United States v. Cooper*, 243 F.3d 411, 418 (7th Cir. 2001); *United States v. Gamba*, 541 F.3d 895, 900–01 (9th Cir. 2008); *United States v. Aptt*, 354 F.3d 1269, 1282 (10th Cir. 2004).

But what happens when counsel wants to concede some elements and not others?  Here, we must decide whether the accused has the autonomy to maintain his innocence of *individual* elements to a charged offense; or, conversely, whether the defendant's choice is all-or-nothing—contest all elements or none.  We hold that a defendant has ultimate authority to decide whether to contest individual elements, except for certain narrowly defined jurisdictional elements described below.

Our holding follows naturally from the fact that the government bears the burden of proving "*every element* of the charged offense" beyond a reasonable doubt.  *Carella v. California*, 491 U.S. 263, 265 (1989) (per curiam) (emphasis added) (citing *In re Winship*, 397 U.S. 358, 364 (1970)); *see also Clark v. Arizona*, 548 U.S. 735, 766 (2006) (holding that "the presumption of innocence" as to "*mens rea* (and every other element)" can only be "overcome" by "proof beyond a reasonable doubt").  If the government does not meet its burden of proof on each individual element, the accused must be acquitted.  *See In re Winship*, 397 U.S. at 364 (explaining that a conviction is impossible without "proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged" (emphasis added)).  We recognize that in *McCoy* the accused asserted his innocence by contesting every element of the charged offenses.  584 U.S. at 426.  And in that context, the Supreme Court reasoned that maintaining innocence and avoiding the "opprobrium" that comes with admitting certain criminal actions, is an objective of the accused.  *Id.* at 423.  But we see no reason to read *McCoy* to *require* the accused to adopt an all or nothing approach—contest all elements or lose the right to contest any.  After all, acquittal is just as mandatory when the government fails to prove one element as when it fails to prove them all.  *See, e.g.*, *Clark*, 548 U.S. at 766 (explaining that the presumption of innocence means that "a defendant is innocent unless and until the government proves beyond a reasonable doubt each element of the offense charged" (citations omitted)).  Thus, the right of the accused "to maintain innocence of the charged criminal acts" as an objective will generally include the right to contest discrete elements of the crime.  *McCoy*, 584 U.S. at 423 (citing U.S. CONST. amend. VI).

We have articulated one narrow exception to this general rule.  In *United States v. Wilson*, we stated that the accused

9

did not have ultimate authority to stipulate to a jurisdictional element—whether bank robberies occurred at federally insured banks—that had nothing to do with the defendants' "conduct, mental states, or involvement in the robberies." 960 F.3d 136, 144 (3d Cir. 2020). Furthermore, *Wilson* reasoned that the jurisdictional element did not trigger the "'opprobrium' or stigma" that were attendant in *McCoy*. *Id.* (quoting *McCoy*, 584 U.S. at 423). Such jurisdictional elements "normally have nothing to do with the wrongfulness of the defendant's conduct" and "do not describe the 'evil Congress seeks to prevent.'" *Rehaif v. United States*, 588 U.S. 225, 230 (2019) (quoting *Torres v. Lynch*, 578 U.S. 452, 467 (2016)). Instead, they are only relevant because they allow federal law enforcement to investigate the crime, federal prosecutors to charge the defendant with the crime, and federal courts to preside over the criminal trial. These limited jurisdictional elements do not bear the same relationship to a defendant's "charged criminal acts" as the substantive elements[5] considered in *McCoy* or as jurisdictional elements that relate to the accused's behavior. *Wilson*, 960 F.3d at 143 (quoting *McCoy*, 584 U.S. at 423).[6] As a result, the decision whether to litigate these "technical [and] tactical" jurisdictional elements rests with counsel. *Id.* at 144. But the Sixth Amendment vests ultimate authority to contest or concede any other element of the crime with the accused.

Taking *McCoy*, *Carella*, and *Wilson* together, our holding comes into focus. Walters alone possessed ultimate authority to agree to the Stipulation. The elements involved—whether Walters was a felon and knew he was a felon—were substantive and not like the jurisdictional elements in *Wilson*. *Cf. Rehaif*, 588 U.S. at 237. Indeed, both elements either concerned Walters's prior conduct or his mens rea with respect to the charged offense. Walters could not have been guilty if the government did not prove both beyond a reasonable doubt.

---

[5] Substantive elements of a crime are inherently tied to "the evil Congress seeks to prevent" because they "primarily define[] the behavior that the statute calls a 'violation' of federal law." *Torres*, 578 U.S. at 457, 467.

[6] Additionally, the Supreme Court often treats jurisdictional elements and substantive elements of a crime differently. *See, e.g.*, *Torres*, 578 U.S. at 457 (explaining that the jurisdictional elements are unlike substantive elements).

Walters thus was entitled to maintain his innocence by contesting these elements and forcing the government to shoulder its burden of proof. [7] Given Walters's objection, the District Court correctly declined to accept the Stipulation as to felon status and Walters's knowledge of his felon status.

### 3. Walters's prior conviction evidence

The next question we must answer is whether the District Court committed reversible error by admitting Walters's conviction history. It did not.

In its landmark 1997 decision, the Supreme Court in *Old Chief v. United States* explained that once the accused offers to stipulate that he is a felon, it is an abuse of discretion to admit evidence of his conviction history solely to prove that he is a felon under 18 U.S.C. § 922(g)(1). 519 U.S. 172, 191–92 (1997). In 2019, in another landmark decision, *Rehaif*, the Supreme Court clarified the elements of an 18 U.S.C. § 922(g)(1) conviction and required the government to prove that the defendant knew that he belonged to a class of individuals prohibited from possessing a firearm—there an unlawful alien, here a felon.[8] *Rehaif*, 588 U.S. at 227.

---

[7] Although not raised by either party, we acknowledge that we are departing from the Second Circuit in holding that the Sixth Amendment vests the accused with the ultimate authority to decide whether to concede discrete elements of the charged offense. *See United States v. Rosemond*, 958 F.3d 111, 122 (2d Cir. 2020). The Second Circuit reached the contrary conclusion because *McCoy* only considered "the charged crime," as a whole. *Id.* For the reasons stated above, we find such a view incongruous with *McCoy*'s emphasis that "assert[ing] innocence[,]" despite "overwhelming evidence[,]" is an "objective of the defense" and therefore falls under the accused's decision-making authority. *McCoy*, 584 U.S. at 422. And we fail to see why counsel conceding critical elements of charged offenses does not violate an accused's Sixth Amendment right.

[8] 18 U.S.C. § 922(g)(1) defines a felon as someone who is convicted of a crime that carries a punishment of more than one year of imprisonment.

As discussed above, Walters's counsel did not have the authority to enter the Stipulation because Walters did not agree to stipulate to his felony status or mens rea. As a result, *Old Chief* did not apply, and the District Court did not abuse its discretion in admitting the evidence. *See Old Chief*, 519 U.S. at 191–92 (explaining that the holding applies when a defendant offers to stipulate to felon status). The same is true for *Rehaif*. When the accused declines to stipulate to his knowledge that he is a felon, the District Court does not abuse its discretion by allowing the government to introduce evidence of the accused's conviction history.

Walters expresses concern that "evidence of the nature of the prior convictions carrie[s] an inherent risk of unfair prejudice." Walters Supplemental Opening Br. 16. True, but this risk, and whether the probative value of the evidence outweighs it, is addressed by Federal Rule of Evidence 403. And district courts have always functioned as gatekeepers, deciding what information may be presented to the jury following a Rule 403 objection. They are exceedingly adept at knowing when and how to exclude or limit the admission of evidence that is, among other things, unfairly prejudicial, needlessly cumulative, or likely to cause confusion, following a motion in limine or evidentiary objection. Fed. R. Evid. 403.[9] That function was not abrogated by the Supreme Court's decision in *Old Chief*. We therefore trust that district courts will continue to

---

[9] The ultimate admission of the evidence is highly contextualized and will depend on the facts and circumstances of each case, any evidentiary objections, and a district court's determination of whether the prejudicial effect of its admission "substantially" outweighs the probative value of the evidence. For example, a district court might admit evidence of four convictions without identifying the particular crimes. Similarly, a district court might admit evidence that an accused served a sentence exceeding one year without identifying the exact duration. Again, these are the types of decisions that district courts routinely make, and we trust them to continue to provide this necessary function.

perform their careful gatekeeping function and use *Old Chief* as a guide when confronted with similar situations.

In summary, the District Court did not abuse its discretion when it admitted evidence of Walters's prior convictions. There was no valid Stipulation. So Walters's conviction history was admissible to prove Walters's felon status and knowledge of the same.

### B.     Section 922(g)(1)

For the first time on appeal, Walters argues that 18 U.S.C. § 922(g)(1) violates his Second Amendment right to bear arms. U.S. CONST. amend. II. At oral argument, counsel conceded that we review Walters's conviction for plain error. *United States v. Olano*, 507 U.S. 725, 732 (1993). To prevail under the plain-error framework, Walters must set forth "(1) a legal error (2) that is plain and (3) that has affected his substantial rights." *United States v. Dorsey*, 105 F.4th 526, 528 (3d Cir. 2024) (citing *Olano*, 507 U.S. at 732–33). After investigating the first three prongs, we inquire whether the error "seriously affects the fairness, integrity, or reputation of judicial proceedings." *Id.* (citing *Olano*, 507 U.S. at 734). At the crux of plain error review is whether the error is "clear or obvious, rather than subject to reasonable dispute" under existing law. *Id.* at 529 (quotation omitted).

Walters argues that recent case law reveals the District Court's clear and obvious error in this case. According to Walters, *United States v. Rahimi*, 602 U.S. 680 (2024), and *Range v. Att'y Gen.*, 124 F.4th 218 (3d Cir. 2024) (en banc) ("*Range II*"), only support either temporary disarmament for dangerous individuals or disarmament for individuals convicted of violent

13

crimes.[10] Under Walters's reading of these cases, § 922(g)(1) is unconstitutional as applied to him because he was not deemed physically dangerous, and he was not arrested for a violent crime. Walters's interpretation of prevailing Second Amendment jurisprudence as it relates to § 922(g)(1) is incorrect.

The Supreme Court's decision in *New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), "represented a seachange in Second Amendment jurisprudence." *Dorsey*, 105 F.4th at 530. *Bruen* established a two-part test for determining the constitutionality of a law under the Second Amendment. We must first decide whether Walters is a part of the "people" protected by the Second Amendment and whether the statute "regulates Second Amendment conduct." *Range II*, 124 F.4th at 226, 228. If so, then the government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 225 (quoting *Bruen*, 597 U.S. at 19). We agree with Walters that *Range II* establishes that individuals convicted of a felony "remain[] among 'the people' despite" their prior convictions. *Id.* at 228. And we agree that § 922(g)(1), as applied to Walters, "regulates 'quintessential Second Amendment conduct: possessing a handgun.'" *United States v. Harris*, 144 F.4th 154, 157 (3d Cir. 2025) (quoting *United States v. Moore*, 111 F.4th 266, 269 (3d Cir. 2024)). But our agreement ends there. Neither *Rahimi* nor *Range II* goes as far

---

[10] To a lesser extent, Walters also tries to rely on the Sixth Circuit's reasoning in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), to show that his conviction violates the Second Amendment. However, Walters acknowledges, as he must, that the Sixth Circuit upheld a § 922(g)(1) conviction and "much of the reasoning in *Williams* is at odds with this Court's analysis in *Range II*[.]" Walters Supplemental Br. 6. It is difficult for us to understand how another circuit court's decision to uphold the constitutionality of a § 922(g)(1) conviction makes it obvious that Walters's conviction is unconstitutional. Because it is not plainly apparent, we find the *Williams* line of argument similarly unavailing.

as Walters contends. And neither saves him from his conviction.

*Rahimi* evaluated whether § 922(g)(8) was consistent with the Nation's history and tradition of firearms regulation and left for another day whether "the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse[.]" *Rahimi*, 602 U.S. at 698 (citation omitted). Section 922(g)(8) only concerns the temporary disarmament of a person who is under a domestic violence restraining order; the Court did not have to decide issues of permanent disarmament for individuals with prior non-violent convictions. And the Court expressly did not decide "the reach of the Second Amendment," *id.* at 691, "whether the government may disarm a person without a judicial finding that he poses a 'credible threat' to another's physical safety," *id.* at 713 (Gorsuch, J., concurring), or "whether the government may disarm an individual permanently," *id.* Therefore, *Rahimi* does not resolve Walters's appeal.

Unable to hang his hat on *Rahimi*, Walters turns his attention to *Range II* to establish that § 922(g)(1) is unconstitutional as applied to him. In *Range II*, we considered whether it was constitutional to permanently disarm someone whose conviction for "food-stamp fraud" was "[m]ore than two decades" ago, who "completed his sentence," and who had virtually no subsequent criminal history. *Range II*, 124 F.4th at 223, 232. In *Range II*'s "narrow" decision, where we expressly declined to "preview how this Court would decide future Second Amendment challenges," we held that § 922(g)(1) violated the Second Amendment as applied to Range because there was "no evidence that [Range] poses a physical danger to others," his offense was not "closely associated with physical danger," and his conviction occurred "[m]ore than two decades" earlier. *Range II*, 124 F.4th at 230, 232, 232 n.13. So Walters's arguments under *Range II* are unavailing. And our decision in *Dorsey*[11] explains why.

---

[11] We take this opportunity to formally affirm *Dorsey*. We released *Dorsey* three days after *Rahimi* was handed down and before *Range II* was argued or issued. Although *Dorsey* did

15

There*,* we held that a four-year-old conviction for carrying a firearm without a license was not substantially similar to Range's over two-decade-old food stamp fraud conviction that was followed by little to no interaction with law enforcement. 105 F.4th at 532; *Range II*, 124 F.4th at 223. Just as in *Dorsey*, "[Walters]'s statute[s] of conviction and the nature of his prior offense[s] are meaningfully different from Range's." *Dorsey*, 105 F.4th at 530, 532. Walters's criminal history is more extensive than either Range's or Dorsey's. Between 2005 and 2012, Walters had nine criminal convictions, including three for the distribution of controlled substances. Therefore, Walters cannot show that it was plainly "beyond dispute that he [was] similarly situated to Range for Second Amendment purposes." *Id.* As the *Dorsey* court explained, "[i]t is far from clear that" an offense for "failure to comply with a state law regulating the possession and use of deadly weapons" is "similarly situated . . . for Second Amendment purposes" to "essentially a crime of dishonesty." *Id.* at 530.

Unlike Range and his decades-old fraud conviction, it is not plain that someone convicted of three drug trafficking convictions does not pose a physical danger to others. As we have explained, drug trafficking may be the kind of conviction justifying disarmament because dealing drugs runs the risk of violence. *See Pitsilides v. Barr*, 128 F.4th 203, 213 (3d Cir. 2025). And if the "Second Amendment's touchstone is dangerousness," then it does not plainly follow that Walters's conviction is unconstitutional. *Id.* (quoting *Folatjar v. Att'y Gen.*, 980 F.3d 897, 924 (3d Cir. 2020) (Bibas, J., dissenting)). Based on our precedent, we evaluate the individual's criminal history before deciding whether § 922(g)(1) has been unconstitutionally applied. *Id.* at 212; *see also Range II*, 124 F.4th at 532 (noting that Range had no significant interaction with law enforcement following his fraud conviction). When looking at the totality of Walters's criminal history, his three convictions for drug trafficking, alone, cut against his as-applied challenge. Therefore, it is hardly plain that it is unconstitutional to disarm, even

not address *Rahimi* nor *Range II*, we hold that its reasoning is consistent with both opinions.

16

permanently, a person convicted of non-violent drug trafficking offenses.

Furthermore, a canvas of our sister circuits' treatment of constitutional challenges to § 922(g)(1) does not lead to a contrary result.[12]

To be clear, we do not here, nor did we in *Dorsey*, foreclose the possibility that someone who is more similarly situated to Range in the nature and remoteness of the prior offense may meet or exceed plain-error review's high bar. Even so, when making this determination, we must conduct a case-by-case analysis. And "[g]iven the sea-change effected by *Bruen*, . . . considering the narrowness of our decision in *Range* [*II*]," and as shown by canvasing our sister circuits' treatment of constitutional challenges to § 922(g)(1), it is far from plain that Walters's conviction violates the Second Amendment. *Dorsey*, 105 F.4th at 533.

---

[12] *E.g.*, *United States v. Langston*, 110 F.4th 408, 413 (1st Cir. 2024) (affirming a § 922(g)(1) conviction based on previous convictions for theft and drug trafficking on plain error review); *United States v. Diaz*, 116 F.4th 458, 462, 472 (5th Cir. 2024) (rejecting a § 922(g)(1) constitutional challenge where the defendant was previously arrested for attempting to break into a car, while possessing a handgun and a baggie of methamphetamines); *Williams*, 113 F.4th at 662 (6th Cir.) (affirming a § 922(g)(1) conviction where the defendant was previously convicted of two felony counts of aggravated robbery with a deadly weapon); *United States v. Jackson*, 110 F.4th 1120, 1122, 1129 (8th Cir. 2024) (affirming a § 922(g)(1) conviction where the defendant was twice convicted for selling controlled substances); *United States v. Duarte*, 137 F.4th 743, 748, 762 (9th Cir. 2025) (en banc) (upholding a § 922(g)(1) conviction for a person who was previously convicted of drug trafficking); *United States v. Dubois*, 139 F.4th 887, 889, 894 (11th Cir. 2025) (rejecting a Second Amendment challenge to a § 922(g)(1) conviction where the defendant was previously convicted of drug trafficking).

**IV.    CONCLUSION**

For the reasons discussed above, we will affirm the District Court's judgment of conviction.